UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------

NAZOKAT ATAKHANOVA, individually and on
behalf of all others similarly situated,

               Plaintiff,

vs.

HOME FAMILY CARE, INC.,

               Defendant.

--------------------------------------------------------------

Case No. 1:16-CV-06707-KAM-RML

**Declaration of Alexander Kiselev
in Opposition to Plaintiffs' Motion
for Leave to Amend**

Alexander Kiselev affirms the following under penalty of perjury:

1.     I am the president of by the defendant, HOME FAMILY CARE, INC. ("HFC"), and I submit this declaration in opposition to Plaintiffs' motion for leave to amend (the "Motion").

2.     The accompanying Memorandum of Law addresses HFC's legal argument in detail.

3.     HFC was founded in 2007, and it has been in business for more than **11 years**.

4.     HFC is not a "pop and mom" shop, as it currently employs in excess of **2,500** people.

5.     Among HFC's more than **2,500** employees, **74** are employed in administrative capacities.

6.     In addition to its **Brooklyn headquarters**, HFC maintains **five more offices** in New York City: a licensed branch office in Queens; a licensed branch office in Brooklyn; and three recruitment offices in Manhattan, Brooklyn and Queens.

7.     HFC's almost **2,400** non-administrative employees provide home health care services to HFC's clients in **all five boroughs of New York City** and **Long Island**.

8.     Even though I am in charge of HFC overall as its President, HFC's day-to-day operations are run by **nine corporate officers**: (1) Queens Branch Manager/Administrator; (2)

Director of Patient Services; (3) Supervisor of Human Resources; (4) Vice President of Operations; (5) Chief Financial Officer; and (6) **four**Supervisors of Coordination.

9.      The above-mentioned corporate officers possess various corporatepowers, including, but not limited to: (1)hire, fire and discipline home health aides;(2)set home health aides' initial rates of pay; (3) define home health aides'conditions of employment, such as live-in or not live-in; (4) assign HFC's clients to home health aides; and (5) define and enforce home health aids'work schedules.

10.     Even though I usually have the last word in hiring and firing decisions concerningHFC's corporate officers, I personally am not involved in firing, hiring, disciplining, scheduling or assigning any of HFC's home health aides. My affirmative answer at the deposition to the question whether all employeeshired by HFC required my approval, Ex. 11 at 8:21,meant that I approve the overall number of HFC's home health aides required to care for HFC's clients. In reality, even if I wanted to participate personally in employment decisions concerning all HFC's home health aides, this would have been impossible considering the numerosity of HFC's home health aides - more than **2,430** - and their work locations–in all **five boroughs of New York City** and **Long Island**.

11.     HFC maintains and stores its employees' files atHFC's Brooklyn headquarters, as well as at its Brooklyn and Queens nursing branches and at HFC's payroll provider "Basic Pay" that has an office at 231 West 29th Street, Suite 503, New York, NY 10001; I have never personally maintained nor stored any HFC employees' files.

12.     I am a resident of Marlboro, New Jersey; I have never residedat any HFC's locations, nor have I ever used HFC's locations for any personal purposes.

13.     HFC maintains bank accounts in its own name, and I have never comingled my own funds with those of HFC.

2

14.     HFC employs home health aides and provides home health care services pursuant to the Article 36 license granted to HFC by the Department of Health of the State of New York; the Department of Health regularly audits HFC for its compliance with the license requirements. I personally possess no licenses that would permit me, as an individual, to employ home health aides and to provide home health care services in the State of New York or any other state.

15.     HFC complies with corporate formalities, including, but not limited to, conducting regular meetings of the Board of Directors and HFC's Continues Quality Committee, among others.

16.     As an employee of HFC, I receive a salary, which, to my knowledge, is less than salaries of some corporate officers.

17.     Plaintiffs appear to be cherry-picking from the transcript of my deposition to support their failing argument that I somehow **solely** manage day-to-day operations of the company comprising more than **2,500 employees, six offices and work sites located in all five boroughs of New York City and Long Island**.

18.     Contrary to Plaintiffs' Memorandum of Law, Pl. Mem. at 5, I never stated that I **solely** manage the entire corporation (it simply is impossible). What I did state was:(a) HFC has five departments and each department is managed by its own manager (see Ex. 9 at 9:2-11); (b) HFC has HR and Scheduling supervisors, Id. at 9:12-10:6; (c) the managers and the supervisors report to me, Id. at 10:7-9; (d) in addition to the managers and supervisors, HFC's day-to-day operations are also managed by the Queens Branch Manager, Id. at 10:10-14; (e) until some time ago, HFC employed a VP "who was running the company", Id. at 10:15-21; (f) managers and supervisors are "running theirdepartment on a daily basis", Id. at 11:13-23; (g) applicants are hired not upon mine, but upon HR's approval, Id. at 16:3-18; (h)home health aides are supervised not by me, but by "case coordinator, director of patient services, nurses", Id. at 16:19-23; (i) investigations of employees' conduct are performed by "an excellent team of peoplewho can do it without me", Id. at 18:4-6; (j)

HFC maintains employees records in its offices, Id. at 18:10-19:8; (k) not me, but HR decides initial salaries upon hiring Id. at 23:7-11; (l) even though wage increases are usually approved by me, theyrequire arecommendation of a case coordinator, Id. at 20:10-21:8; and (m) employees work schedules are managed not by me, but by case coordinators, Id. at 21:15-22:6.

19.    Annexed hereto as exhibits are the following items:

a.    Exhibit "1" – HFC Entity Information Maintained by N.Y.S. Department of State.

b.    Exhibit "2" – HFC Lease Agreement for its headquarters in Brooklyn, New York.

c.    Exhibit "3" – HFC Lease Agreement for its regional office in Queens, New York.

d.    Exhibit "4" – HFC Lease Agreement for its recruiting office in Brooklyn, New York.

e.    Exhibit "5" – HFC Lease Agreement for its nursing office in Brooklyn, New York.

f.    Exhibit "6" – HFC Lease Agreement for its recruiting office in New York, New York.

g.    Exhibit "7" – HFC Organizational Chart.

h.    Exhibit "8" – HFC's License granted by the State of New York to HFC's Brooklyn nursing office.

i.    Exhibit "9" – HFC's License granted by the State of New York to HFC's Queens branch.

j.    Exhibit "10" – Department of Health audit letter.

k.    Exhibit "11" – Transcript of Deposition of Alexander Kiselev.

l.    Exhibit "12" – Pay stubs of Alexander Kiselev.

m.    Exhibit "13" – HFC Board of Directors meetings' minutes.

n.    Exhibit "14" – HFC Quality Improvement Committee meetings' minutes.

WHEREFORE, it is respectfully requested that this court denyPlaintiffs'Motion its entirety.

Respectfully submitted this 31th day of October, 2018.

Alexander Kiselev