UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NAZOKAT ATAKHANOVA, individually and on behalf of all others similarly situated,

                Plaintiff,                      Case No. 1:16-CV-06707-KAM-RML

vs.

HOME FAMILY CARE, INC.,

                Defendant.

# DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

VLADIMIR TSIRKIN & ASSOCIATES
Vladimir Tsirkin, Esq.
104 N. Broadway Suite A
South Amboy, New Jersey 08879
*Attorneys for Defendant*

**PRELIMINARY STATEMENT**

The named plaintiff, Nazokat Atakhanova ("Ms. Atakhanova" or "Named Plaintiff"), brought this action on behalf of a collective of individuals (collectively, "Plaintiffs") to recover overtime pay allegedly underpaid by the defendant, Home Family Care, Inc. ("Defendant" or "HFC").

Defendant submits this memorandum of law in opposition to Plaintiffs' motion ("Motion") in which Plaintiffs seeks leave to amend Plaintiffs' Complaint ("Original Complaint") to add HFC's president, Alexander Kiselev ("Mr. Kiselev"), as an individual defendant. Additionally, Plaintiffs seek to remove the third cause of action of the Original Complaint under New York Labor Law ("NYLL") alleging improper wage statements, and replace it with a NYLL cause of action for failing to provide proper hiring notices (the "Proposed Cause of Action"). Defendant opposes Plaintiffs' Motion on the grounds that it is untimely, prejudicial to Defendant and futile.

**ARGUMENT**

It is well settled that a corporation and its owners are separate entities existing independently of each other. See Burnet v. Clark, 287 U.S. 410, 415 (1932) ("A corporation and its stockholders are generally to be treated as separate entities"). New York law has historically allowed holding owners of a corporation liable when the corporation is used as the owners' "alter ego". See Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd., 909 F.2d 698, 703 (2d Cir. 1990). Even though Plaintiffs' Motion does not directly allege that HFC is an alter ego of Mr. Kiselev, Plaintiffs' unsupported allegations that Mr. Kiselev "**solely** manages the **entire** corporation", Pl. Mem. at 6 (emphasys added), require Defendant's clarification as to the size and complex organizational structure of the corporation, so that the Court could accurately assess whether it is at all possible for one individual to **solely** manage a business of HFC's magnitude.

HFC has been in business for 11 years, Kiselev Aff. ¶ 3. It presently employs more than **2,500** people, with **74** individuals employed as HFC's directors, supervisors, managers and administrators.

Id. ¶ 5. HFC maintains **six** offices throughout New York City, Id. ¶ 6. Its more than **2,430** home health aides provide services in all **five** boroughs of New York City and Long Island. Id. ¶ 7. Clearly, one person cannot **solely** manage HFC, let alone **solely** manage its day-to-day operations, Pl. Mem. 4, and neither can that one person be in charge of hiring and firing "all employees", Id. Even if Mr. Kiselev somehow single-handedly manages more than 2,500 employees working out of HFC's six offices in HFC clients' residencies located in all five boroughs of New York City and Long Island, Plaintiffs' Motion and their proposed Amended Complaint failed to present any facts supporting Mr. Kiselev's supernatural managerial abilities.

### 1. Plaintiffs Fails to Establish the Requisite Elements of the Economic Reality Test

Under FLSA, in cases where a plaintiff is employed by a corporation, individual officers or directors of the corporation may be "deemed employers under the FLSA where the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines employees' salaries and makes hiring decisions." Jiao v. Chen, 2007 U.S. Dist. LEXIS 96480 at *32 (S.D.N.Y. 2007) (internal quotations omitted). Determination of the individual's control is governed by the "economic reality" test developed by the Second Circuit, which seeks to answer the question of whether the purported employer had the power to control the plaintiff-employees in light of four factors: (1) the power to hire and fire the employees; (2) the power to supervise and control the employees' work schedules or conditions of employment; (3) the power to determine the rate and method of the employees' compensation; and (4) the maintenance of employment records. See Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999). Even though assigning the status of the "employer" to an officer does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control, see Id., bare allegations of an individual's control over employee-plaintiffs that are based solely upon the individual's job title and presumed duties are insufficient to establish that the individual is an

"employer" under the "economic reality" test. See Bravo v. Eastpoint Int'l, 2001 U.S. Dist. LEXIS 3647 (S.D.N.Y. 2001).

Here, the record clearly shows that even though Mr. Kiselev holds a title of HFC's president, and, therefore, is in charge of HFC overall, its day-to-day operations are not run by Mr. Kiselev, but by nine corporate officers, Kiselev Aff. ¶ 8. The nine corporate officers hire, fire and discipline HFC's home health aides, establish home health aides' initial rates of pay, define home health aides' conditions of employment, determine home health aides' client assignments, and manage home health aides' work schedules, including overtime, Id. ¶ 9.

Mr. Kiselev's involvement in HFC's employment decision-making process is limited to establishing the overall number of home health aides to be employed by HFC, and to hiring and firing HFC's officers who are not members of the collective Plaintiffs. Id. ¶ 10. Due to the numerosity of HFC's workforce and their work assignments located in five boroughs of New York City and Long Island, Mr. Kiselev is not and cannot be involved in firing, hiring, disciplining and scheduling HFC's home health aides. Id. Thus, Plaintiffs fails to satisfy the first three prongs of the "economic reality" test.

As for the fourth prong of the "economic reality" test, Plaintiffs do not dispute that HFC, and not Mr. Kiselev maintain HFC employees' records. HFC maintains and stores employees' records at HFC's Brooklyn headquarters, Brooklyn and Queens nursing branches, and with HFC's payroll provider, "Basic Pay", Id. ¶ 11. As such, Plaintiffs fails to satisfy the fourth and final prong of the "economic reality" test as well.

Plaintiffs appears to cherry-pick Mr. Kiselev's deposition to support their failing argument that Mr. Kiselev somehow manages day-to-day operations of the company comprising more than 2,500 employees with six offices and worksites located in five boroughs of New York City and Long Island. Contrary to Plaintiffs' Memorandum of Law, Pl. Mem. at 5, Mr. Kiselev did not testify that he **solely**

4

manages the entire corporation, as it is simply impossible. Instead, Mr. Kiselev testified that: (a) HFC has five departments and each department is managed by its own manager, Kiselev Aff. Ex. 11 at 9:2-11; (b) HFC employs HR and four Scheduling supervisors, Id. at 9:12-10:6; (c) the managers and the supervisors report to Mr. Kiselev, Id. at 10:7-9; (d) in addition to the managers and supervisors, HFC's day-to-day operations are also managed by the Queens Branch Manager, Id. at 10:10-14; (e) until some time ago, HFC employed a VP "who was running the company", Id. at 10:15-21; (f) managers and supervisors are "running their department on a daily basis", Id. at 11:13-23; (g) applicants are hired not upon Mr. Kiselev's, but upon HR approval, Id. at 16:3-18; (h) home health aides are supervised by "case coordinator, director of patient services, nurses", Id. at 16:19-23; (i) investigations of employees' conduct are performed by "an excellent team of people who can do it without me", Id. at 18:4-6; (j) HFC maintains employees records in its offices, Id. at 18:10-19:8; (k) HR determines initial salaries upon hiring Id. at 23:7-11; and (l) employees work schedules are managed by case coordinators, Id. at 21:15-22:6.

Plaintiffs offer no supporting details to substantiate their allegations other than "accusing" Mr. Kiselev of having the job title of president, and allege no facts concerning the extent of Mr. Kiselev's alleged involvement in HFC's hiring and/or firing practices. Incredibly, Plaintiffs do not even contend that any of them were hired, fired or underpaid by Mr. Kiselev personally! Plaintiffs' allegations concerning Mr. Kiselev's level of control over their work schedules, conditions of employment, compensation, and record-keeping policies are even more attenuated. Plaintiffs assert no facts whatsoever that would show that Mr. Kiselev's exercise of his powers as HFC's president impacted any aspects of Plaintiffs' employment.

And last but not least, in order to employ home health aides, an employer bust be licensed by the New York Department of Health. While HFC is licensed to employ home health aides, Mr. Kislev is not, Kiselev Aff. ¶ 14; hence, Mr. Kiselev should not be deemed "employer".

In light of the foregoing, Plaintiffs fail to satisfy all four prongs of the "economic reality" test, and Plaintiffs' Motion seeking to add Mr. Kiselev as an individual defendant must be denied.

### 2. Proposed Amended Complaint Fails Basic Pleading Requirements

Plaintiffs' Motion and their proposed Amended Complaint fail the most basic pleading requirements that where a complaint names multiple defendants, Rule 8(a) requires that plaintiffs "indicate clearly the defendants against whom relief is sought, and the basis upon which relief is sought against the particular defendants." Yucyco, Ltd. v. Republic of Slovenia, 984 F. Supp. 209, 219 (S.D.N.Y 1997) (quoting Mathews v. Kilroe, 170 F. Supp. 416, 417 (S.D.N.Y 1959)); see also Ingber v. Truffleman, 2013 U.S. Dist. LEXIS 151494, 2013 WL 5728254 (E.D.N.Y. Oct. 22, 2013) (quoting Yucyco and Pereira v. Ocwen Loan Servicing, LLC, 2012 U.S. Dist. LEXIS 56150, 2012 WL 1381193, at * 3 (E.D.N.Y. Apr. 18, 2012). Instead of indicating clearly the alleged wrongdoings of Mr. Kiselev who has not personally employed nor directly supervised any of the collective Plaintiffs, they are merely relying on use of the plural term "Defendant**s**" to hide the apparent deficiency of Plaintiffs' Motion and proposed Amended Complaint. Here, even assuming that Plaintiffs have established that Mr. Kiselev is an "employer" under FLSA, which they have not, Plaintiffs' Motion and the proposed Amended Complaint fail basic requirements of Rule 8(a), and, therefore, Plaintiffs' Motion must be denied.

### 3. Plaintiffs' Motion Seeking to Add Claims Under the New York Wage Theft Prevention Act is Futile

"The party opposing . . . amendment has the burden of establishing that leave to amend would be prejudicial or futile. In making this determination, the court should not consider the merits of a claim or defense on a motion to amend unless the amendment is clearly frivolous or legally insufficient on its face." Sokolski v. Trans Union Corp., 178 F.R.D. 393, 395 (E.D.N.Y. 1998). In this present case, the proposed amendment adding claims under the New York Wage Theft Prevention Act, NYLL §195 ("WTPA"), is clearly futile.

6

Plaintiffs, in their Memorandum of Law in support of Motion, content that they did not claim violations of WTPA in their Original Complaint because "information substantiating the Proposed Cause of Action was discovered during the deposition of the Proposed Defendant, Mr. Kiselev. [Kiselev Dep. at 19:9-23.]." Pl. Mem. at 8.

Nothing can be further from the truth. Plaintiffs' notice of deposition under R. 30(b)(6), annexed to the affirmation of Vladimir Tsirkin as Exhibit 1T, did not require a deponent to have knowledge as to Defendant's compliance with WTPA notice requirements. Had Plaintiffs requested the deponent to have such knowledge, Defendant would have produced HFC's HR Supervisor Marina Tkachuk, who would have testified that "Every new hire of HFC receives a written notice containing the new hire's regular rate of pay, his or her overtime rate of pay, the name of the employer, the physical address of the employer's main office, the telephone and facsimile numbers of the employer." Tkachuk Aff. ¶ 3.

She would have also testified that "When a given employee's rate of pay changes, that employee receives a new written notice containing the employee's new regular rate of pay, his or her new overtime rate of pay, the name of the employer, the physical address of the employer's main office, the telephone and facsimile numbers of the employer", Id. ¶ 5.

In addition, Ms. Tkachuk would have produced copies of the WTPA-required notices acknowledged by the named plaintiff herself, Ms. Atakhanova. Id. Ex.1M, Ex. 2M, Ex. 3M.

Instead, Defendant, acting upon what was in fact requested by Plaintiffs in their deposition notice, produced for deposition HFC's president Mr. Kiselev, who even though possessed the requisite knowledge, was not aware whether HFC was issuing hiring notices in writing and answered to the best of his knowledge, "I don't think so." Kiselev Aff. Ex. 11 at 19:19-20.

7

Clearly, Defendant was and is in compliance with the WTPA notice requirements, and, since Plaintiffs could not claim WTPA violations in their original Complaint, neither can they do it now. In light of the foregoing, Plaintiffs' Motion must be denied in its entirety.

### 4. Plaintiffs' Application to Add Claims Under the New York Wage Theft Prevention Act is Untimely and Prejudicial to Defendant

Plaintiffs' reliance on <u>Sokolski v. Trans Union Corp.</u>, 178 F.R.D. 393, 395 to show that the timing of their Motion was appropriate is misplaced. In <u>Sokolski</u>, an order consolidating several separately brought actions was entered on April 25, 2017, and less than three months later, on July 17, 2017, plaintiffs moved for leave to amend the complaint. Notably, the parties in <u>Sokolski</u> had not been yet engaged in any substantive discovery at the time motion for leave to amend was filed.

The facts and circumstances of <u>Sokolski</u> are not applicable to the matter at hand. Unlike in <u>Sokolski</u>, Plaintiffs' Motion was filed almost two years after this action was commensed. Defendant has expended significant funds on responding to the allegations of Plaintiffs' Original Complaint and on more than 18 months of discovery. Discovery has already been extended four times, and is about to be extended again due to Plaintiffs' refusal to comply with Defendant's discovery requests. Plaintiffs failed to provide any audible explanations as to why they failed to allege WTPA violations in the Original Complaint. Obviously, Plaintiffs' contention that they "discovered" alleged WTPA violations only after deposing Mr. Kiselev holds no water: there were no violations, since even Named Plaintiff herself has acknowledged in writing that she received WTPA-required notices four years in the row. Tkachuk Aff. ¶¶ 8 – 10; <u>see also</u> <u>Id.</u> Ex. 2M, Ex. 3M, Ex. 4M.

The obvious reason Plaintiffs want to add frivolous WTPA claims now is that, as the Court may know, the state law claim for which Plaintiffs seek class certification is the subject of a pending administrative proceeding by the New York State Department of Labor that is in its advanced stages. <u>LS20 2016005362 v. Hoe Family Care, Inc.</u> (N.Y. DOL). That proceeding addresses potential overtime pay remedies including the same claim and the same collective of employees for which

8

Plaintiffs would seek to include in a Rule 23 class here. Clearly, Plaintiffs, by asking the Court for leave to add frivolous WTPA claims (even at the risk of the imposition of Rule 11 sanctions) want the Amended Complaint to comprise not overtime-based state claims in case Plaintiffs' overtime-based claims fail Rule 23 certification.

In light of the foregoing, amending the Original Complaint by adding frivolous WTPA claims two years after this action was commenced should be deemed untimely, extremely prejudicial to Defendant and disproportionally beneficial to Plaintiffs. As such, Plaintiffs' motion must be denied.

**5. The Statute of Limitation Should Not Relate to Plaintiffs' Original Complaint**

An amended pleading relates back to the date of the originally-filed pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In the matter at hand, Plaintiffs' frivolous WTPA claims do not arise of the conduct, transaction, or occurrence set out in the Original Complaint, as they have nothing to do with the overtime-centric FLSA and NYLL claims of the Original Complaint.

"[F]ederal courts must borrow a state's tolling rules unless to do so 'would defeat the goals of the federal statute at issue.'" M.D. v. Southington Bd. of Educ., 334 F.3d 217, 224 (2d Cir. 2003) (quoting Hardin v. Straub, 490 U.S. 536, 539, 109 S. Ct. 1998, 104 L. Ed. 2d 582 (1989)). New York law provides for equitable tolling only where a defendant "wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." Kellogg v. Office of the Chief Med. Exam'r of the City of New York, 6 Misc. 3d 666, 791 N.Y.S.2d 278, 283 n.2 (Sup. Ct. Bronx Co. 2004). The essence of the tolling doctrine is that serious misconduct by the defendant should estop the defendant from relying on the statute of limitations. See Keitt v. New York City, 882 F. Supp. 2d 412, 439 (S.D.N.Y. 2011).

Here, Plaintiffs have not identified any fraud, misrepresentation or deception by Defendant that prevented Plaintiffs from bringing their claim for an alleged violation of the WTPA in the Original Complaint. Plaintiffs have, therefore, failed to demonstrate that they are entitled to equitable tolling under both Federal and New York law, and their Motion for leave to amend must be denied.

Dated: South Amboy, New Jersey  
       October 31, 2018

Respectfully submitted,

<u>/s/ Vladimir Tsirkin</u>  
Vladimir Tsirkin  
104 N. Broadway, Suite A  
South Amboy, New Jersey 08879  
*Attorney for Defendant*