UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
NAZOKAT ATAKHANOVA, individually
and on behalf of all others
similarly situated,                                    **Memorandum & Order**

         *Plaintiff*,                          16-CV-6707(KAM)(RML)

   -against-

HOME FAMILY CARE, INC., et al.,

        *Defendants*.
---------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

      Presently before the court is a motion to certify a
class of home healthcare aides who allege that their employer
failed to pay overtime wages in violation of the Fair Labor
Standards Act and the New York Labor Law, and failed to provide
proper hiring notices in the employees' primary languages in
violation of the New York Labor Law.  The case was previously
conditionally certified as a collective action under the Fair
Labor Standards Act.  For the reasons herein, the motion to
certify a class action for the New York Labor Law claims is
GRANTED.

**Background**

   **I.   Factual Allegations**

      Home Family Care, Inc. ("Home Family Care") is a
corporation based in Brooklyn, New York that employs caregivers
who provide in-home medical care to people in New York City.  (ECF

No. 72, Amended Complaint ("Am. Compl."), at ¶¶ 8, 12.)  Nazokat
Atakhanova ("Plaintiff") was employed by Home Family Care as a
home health aide for various intervals of time between August 2014
and March 2018.  (ECF No. 74-2, Atakhanova Declaration
("Atakhanova Decl."), at ¶ 2.)  Plaintiff alleges that she was
paid $10 per hour for the hours she worked up to 40 hours per
week, and $12 per hour for the hours she worked in excess of 40
hours.  (Am. Compl. ¶ 17.)  Plaintiff alleges that in addition to
herself, other employees of Home Family Care "regularly worked in
excess of forty (40) hours per workweek" but were not paid "the
required overtime rates for hours worked in excess of forty (40)
hours per workweek," in violation of the Fair Labor Standards Act
and the New York Labor Law.  (*Id.* at ¶¶ 38-39, 43.)

        Plaintiff further alleges that Home Family Care failed
to provide employees with notices in their primary languages about
their base pay rates and overtime rates, as required by the New
York Labor Law.  (*Id.* at ¶ 47.)  Plaintiff's primary language is
Russian, but she alleges that she was only provided a document
regarding her pay rate in English, and that document did not
contain her overtime rate.  (Atakhanova Decl. ¶ 8.)

**II.  Procedural History**

        On December 4, 2016, Plaintiff filed a complaint,
individually and on behalf of those similarly situated, against

2

her employer, Home Family Care.  (ECF No. 1, Complaint.)  The complaint alleged that Home Family Care failed to pay its employees overtime wages in violation of federal and New York law, and failed to provide employees accurate statements of wages as required by New York law.  (*See generally id.*)

In October 2017, Magistrate Judge Robert M. Levy conditionally certified a collective action under the Fair Labor Standards Act for purposes of providing notices to putative collective action members.  (ECF Dkt. Order Oct. 2, 2017.)  More than 160 individuals have filed consents to join the collective action.

Plaintiff filed a motion to amend her complaint on October 8, 2018.  (ECF No. 59.)  The motion was referred to Judge Levy, who issued a Report and Recommendation (the "R&R") recommending that Plaintiff's motion be granted.  (ECF No. 67.) The R&R was adopted by this court on July 3, 2019.  (ECF Dkt. Order July 3, 2019.)

On July 12, 2019, Plaintiff filed her amended complaint. (*See* Am. Compl.)  The amended complaint added Alexander Kiselev (together with Home Family Care, the "Defendants") as a defendant. Mr. Kiselev is a shareholder and President of Home Family Care. (*Id.* at ¶ 9.)  The amended complaint added a claim that Defendants failed to provide proper hiring notices in violation of the New

3

York State Labor Law, and dropped the claim for failure to provide accurate wage statements. (*Id.* at ¶¶ 46-48.) Defendants filed their answer to the amended complaint on July 31, 2019. (ECF No. 73.)

Plaintiff then filed the instant motion for class certification of the New York Labor Law claims, which Defendants oppose. (*See* ECF Nos. 74, 75, 76.) Plaintiff seeks to certify a class consisting of:

> All individuals who performed work for Home
> Family Care, Inc. as home health aides and/or
> home attendants from January 1, 2015 through the
> present, and who worked more than 40 hours in any
> work week, or worked four (4) or more 24-hour
> shifts in any work week.

(ECF No. 74-18, Memorandum in Support of Class Certification ("Mem."), at 3-4.)

## Legal Standards

### I.   Federal and State Labor Law

Under the Fair Labor Standards Act ("FLSA"), subject to certain exceptions, an employee who works more than 40 hours in a workweek must "receive[] compensation for his [or her] employment in excess of [40] hours . . . at a rate not less than one and one-half times the regular rate at which he [or she] is employed." 29 U.S.C. § 207(a)(1). The New York State Labor Law ("NYLL") also generally provides for "one and one-half times the employee's

4

regular rate" when the employee works more than 40 hours in a workweek.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; *see Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 519 (S.D.N.Y. 2013).

Moreover, under the NYLL, all employers must "provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing," *inter alia*, "the rate or rates of pay."  N.Y. Lab. Law § 195(1)(a).  "For all employees who are not exempt from overtime compensation," the notice must include "the regular hourly rate and overtime rate of pay." *Id.*

"Because FLSA and NYLL claims usually revolve around the same set of facts, plaintiffs frequently bring both types of claims together in a single action using the procedural mechanisms available under 29 U.S.C. § 216(b) to pursue the FLSA claims as a collective action and under [Federal] Rule [of Civil Procedure] 23 to pursue the NYLL claims as a class action under the district court's supplemental jurisdiction." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011).

## II.  Class Certification

Under Federal Rule of Civil Procedure 23 ("Rule 23"), a plaintiff may bring a civil action on behalf of a class "only if":

"(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)-(4).  In addition, under Rule 23(b)(3), which would govern the proposed class action here, the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

    In addition to the requirements of numerosity, commonality, typicality, adequate representation, predominance, and superiority set forth in Rule 23, the Second Circuit has recognized an "implied requirement of ascertainability." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006).  "To be ascertainable, the class must be 'readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling.'"  *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (quoting *McBean v. City of N.Y.*, 260 F.R.D. 120, 132–33 (S.D.N.Y.2009)).

"Rule 23 does not set forth a mere pleading standard."
*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "A
party seeking class certification must affirmatively demonstrate
his [or her] compliance with the Rule," and "be prepared to prove
that there are in fact sufficiently numerous parties, common
questions of law or fact, etc."  *Id.*  Class "certification is
proper only if 'the trial court is satisfied, after a rigorous
analysis, that the prerequisites of Rule 23(a) have been
satisfied.'"  *Id.* at 350-51 (quoting *Gen. Tel. Co. of Sw. v.
Falcon*, 457 U.S. 147, 161 (1982)).

### Discussion

The court addresses each of Rule 23's requirements for
class certification in turn.

**I.    Numerosity**

First, to satisfy Rule 23, the proposed class must be
"so numerous that joinder of all members is impracticable."  Fed.
R. Civ. P. 23(a)(1).  Here, Defendants do not dispute that the
numerosity requirement is met.  Plaintiff notes that 167
individuals have filed consents to join the FLSA collective
action.  (Mem. at 3.)  According to Defendants, the number is
actually greater.  (*See* ECF No. 75, Memorandum in Opposition to
Class Certification ("Opp."), at 2 ("Approximately 180 individuals
filed consents to join the action under the FLSA.").)

Whether the correct number is 167 or 180, there are sufficiently numerous potential class members to make joinder impractical. *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("the difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable") (citing 1 Herbert B. Newberg, *Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels* § 3.05, at 141-42 (2d ed. 1985)). Accordingly, Rule 23(a)(1) is satisfied.

## II. Commonality

Next, the court must find that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality exists when "[t]he legal theory set forth in [the] [c]omplaint is common to all class members," such as where an "alleged failure to pay overtime violates New York's labor law." *Noble v. 93 Univ. Pl. Corp.*, 224 F.R.D. 330, 342 (S.D.N.Y. 2004). "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Poplawski v. Metroplex on the Atl., LLC*, No. 11-cv-3765, 2012 WL 1107711, at *7 (E.D.N.Y. Apr. 2, 2012); *see Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 127 (S.D.N.Y. 2011) ("[C]laims by workers that their employers have unlawfully denied them wages

8

to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification.").

Here, Plaintiff alleges that "[D]efendants engaged in an unlawful policy and practice of failing to pay overtime compensation at one and one-half times their regular hourly rate, and failed to provide them with proper hiring notices." (Mem. at 9; *see generally* Am. Compl.)  Plaintiff supported these allegations with her own declaration, declarations from potential class members, and payroll records.  (*See* ECF No. 74, Exs. B-F, J-O.)  Defendants argue that that proof of the named Plaintiff's claim "is not susceptible to common proof and resolution" of all class claims, and that the claims "devolve into individual questions that depend on individualized proofs." (Opp. 8.)  Defendants argue that adjudication of Plaintiff's claim will not "adjudicate or advance a claim for even a single other class member," due to variations in the overtime rates paid to various employees. (*Id.* at 8-9.)

Even where "there are some differences among employees," such as "responsibilities, hours worked, and salaries," if "[a]ll potential class members are alleged to have been harmed by a common practice," i.e., "defendant's failure to adequately compensate employees for overtime hours," the commonality requirement is met.  *Noble*, 224 F.R.D. at 342; *see*

*also Martinez v. Ayken, Inc.*, No. 13-cv-7411, 2016 WL 5107143, at *10 (E.D.N.Y. Feb. 29, 2016) ("When viewed as a whole, the deposition testimony, declarations and time/payroll records are sufficient proof to meet both the commonality and typicality requirements as they adequately establish that, at minimum, there is at least 'one issue common to all class members' that provides the 'unifying thread' which serves to bind the claims of the class members together.") (quoting *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008)).

Variations among class members regarding the number of hours worked or the amounts owed by the employer are relevant only "to the damages each employee is owed, not to the common question of Defendant's liability." *Espinoza*, 280 F.R.D. at 130; *see Shabazz v. Morgan Funding Corp.*, 269 F.R.D. 245, 250-51 (S.D.N.Y. 2010) ("Any class action based on unpaid wages will necessarily involve calculations for determining individual class member damages, and the need for such calculations [does] not preclude class certification."); *see also Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) ("Common issues—such as liability—may be certified, consistent with Rule 23, even where other issues—such as damages—do not lend themselves to classwide proof.").

Moreover, Defendants admitted in their responses to Plaintiff's requests for admissions that they "did not pay hourly home health aides at the rate of one and one-half times their regular rate of pay for all hours worked in excess of forty during each and every workweek," and that they "did not pay home health aides who worked four or more 24-hours live-in work shifts in one work week at the rate of one and one-half times their regular rate of pay." (ECF No. 74, Ex. H, at Nos. 7, 9.) A common policy of failing to pay overtime rates is sufficient to satisfy Rule 23(a)(2)'s commonality requirement. *See Rivera v. Harvest Bakery, Inc.*, 312 F.R.D. 254, 271 (E.D.N.Y. 2016) (holding defendants' admissions of failure to pay overtime rates, along with plaintiffs' evidence that overtime was not paid, satisfied commonality requirement).

Defendants rely heavily on *Enriquez v. Cherry Hill Mkt. Corp.*, 993 F. Supp.2d 229, 236 (E.D.N.Y. 2013), *reconsideration denied*, 993 F. Supp. 2d 236 (E.D.N.Y. 2014), a case in which Judge Block denied certification of a potential class that brought claims based on overtime pay. (*See* Opp. at 6-7, 9-10.) Defendants argue that, as in *Enriquez*, a "'policy' of noncompliance with wage-and-hour laws does not establish commonality if demonstrating such noncompliance requires . . . an inquiry into the total pay and total hours worked for each

11

employee." (*Id.* at 8 (quoting *Enriquez*, 993 F. Supp. 2d at 237).)  The weight of case law in the Second Circuit, however, has held that a common policy of failing to pay overtime is sufficient to meet the commonality requirement.  *See Moreira v. Sherwood Landscaping Inc.*, No. 13-cv-2640, 2015 WL 1527731, at *12 n.7 (E.D.N.Y. Mar. 31, 2015) ("The Court finds Defendants' exclusive reliance on *Enriquez* misplaced in light of the weight of authority in this Circuit, acknowledged in Judge Block's decision denying reconsideration, which held that claims 'that an employer has systematically failed to pay employees the legally mandated wage' still satisfy the commonality factor after *Dukes.*").

Likewise, Plaintiff's claim for improper wage notices pursuant to NYLL § 195 is also common to all class members. Courts consistently have held that a potential class alleging a wage notice claim meets the commonality requirement.  *See, e.g.*, *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 69 (S.D.N.Y. 2018) ("The issues here," including "whether the class members received wage notices and statements that were in compliance with the law—will produce answers that apply to all plaintiffs within each subclass and drive the resolution of this litigation."); *Velez v. 111 Atlas Restaurant Corp.,* No. 14-cv-6956, 2016 WL 9307471, at *22 (E.D.N.Y. Aug. 11, 2016) (finding

12

wage notice claims involved issues of fact and law common to every member of the proposed class).

Accordingly, the court is satisfied that there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).

**III. Typicality**

Next, the court considers whether Plaintiff's claim is "typical" of the proposed class.  Fed. R. Civ. P. 23(a)(3). Typicality is present when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux,* 987 F.2d at 936).  Defendants argue that Plaintiff's claim is atypical of the claims of the proposed class because (1) it "does not cover the time period applicable to potential class claims that are not duplicative of" proceedings conducted by the New York Department of Labor, and (2) it "does not cover class members paid flat rates for 24-hour live-in shifts."  (Opp. at 12-13.)

In a wage case, the typicality requirement is satisfied where the named plaintiff and proposed class members "were subject to the same general employment scheme," and their claims are based on "the same course of events and legal

13

theory." *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 281 F.R.D. 100, 105 (E.D.N.Y. 2011) (quotations omitted). Typicality is present even if there are factual differences among the claims if the named plaintiff alleges that defendants engaged in the same unlawful conduct toward them. *See Robidoux,* 987 F.2d at 937 ("[T]he typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."); *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81, 86 (S.D.N.Y. 2001) (finding typicality requirement met despite differences among plaintiffs as to number of hours worked, type of work, and amount of pay because those factors related to the amount of damages not class certification requirements).

Defendants first assert that Plaintiff's claim does not cover the same time period applicable to the claims of other potential class members, and that Plaintiff's claim arises from a period of time that is duplicative of a New York Department of Labor investigation into Defendants' pay practices in 2016. (Opp. at 12.)  Plaintiff alleges that she was not paid for overtime she worked in 2016, and the proposed class would include employees who worked after Defendants "changed [their] payroll practices regarding overtime" in 2017, following the Department of Labor inquiry. (*Id.* at 2-3.)

14

Contrary to Defendants' contention that their pay practices changed "[s]tarting from 2017" (*id.* at 3; *see* ECF No. 74, Ex. A, Kiselev Dep., at 69), Plaintiff counters that some prospective class members were not paid proper overtime rates at least into October 2017. (ECF No. 76, Plaintiff's Reply Brief ("Reply"), at 5 (citing Exs. L and M, paystubs of putative class members Fatima Kamilova and Halyna Tkachenko)); *see generally In re Initial Public Offerings,* 471 F.3d at 42 (a district court must "assess all of the relevant evidence admitted at the class certification stage."). Thus, even if Plaintiff was only underpaid during 2016, that alone does not make her claim atypical, because she suffered from Defendants' failure to consistently comply with the requirement to pay overtime at the legal rate, just as other class members allegedly did.[1]  If Defendants changed the amount by which they underpaid employees between 2016 and 2017, or if the overtime rates in New York changed during that time, that bears only on the determination of damages, not typicality.  *See Ansoumana*, 201 F.R.D. at 86 ("[T]he differences cited by the Defendants do not undermine the

---

[1] To the extent Defendants argue that Plaintiff's claim is duplicative of the New York Department of Labor proceedings, that argument primarily goes to superiority rather than typicality, and the court will address it below.

central, specific claim presented by the Plaintiffs as a group.").

Second, Defendants argue that "Plaintiff's own claim has nothing to do with the rules applicable to aides working 24-hours shifts or as live-in aides," because Plaintiff herself worked only day-shifts, rather than 24-hour shifts. (Opp. at 13.) The essence of Plaintiff's allegation, however, is that Defendant failed to pay proper overtime rates (and provide proper wage notices) to employees, regardless of whether they worked standard workdays, or 24-hour shifts as live-in aides. Based on Plaintiff's allegations, this does not appear to be a case in which only one group of employees was improperly compensated. *See Kinkead v. Humana at Home, Inc.*, 330 F.R.D. 338, 349 (D. Conn. 2019) (certifying class only of workers "who worked *at least one or more live-in shifts*" where "the parties . . . agree[d] that [defendant] paid its [home healthcare workers] for overtime only in weeks where they solely worked non-live-in shifts").

It is true that for the two different types of shifts, the requirement to pay overtime was triggered based on a different number of hours. Under the New York Department of Labor's guidance, healthcare workers need only be paid for thirteen hours during a 24-hour shift, so long as the worker

16

receives at least five hours of uninterrupted sleep and three
meal breaks of at least one hour each during the shift. *See
Downie v. Carelink, Inc.*, No. 16-cv-5868, 2018 WL 3585282, at *8
(S.D.N.Y. July 26, 2018) (citing N.Y. St. Dep't of Labor, Op.
No. RO-09-0169 at 4 (Mar. 11, 2010)).[2]  Thus, if Employee A
worked seven eight-hour shifts in a workweek (for a total of 56
hours, all of which are compensable), and Employee B worked four
24-hour shifts (13 hours of each being compensable, for a total
of 52 compensable hours), and neither employee was paid overtime
at the legal rate, Defendants would be liable to both employees.
The calculation of *how much* Defendants owed to each employee
would require an individualized calculation, but that is
ultimately a question of damages, not whether Plaintiff's legal
claim is typical of the proposed class.  Typicality is similar
to commonality, and "focuse[s] on whether the employer had
company-wide compensation policies that injured the potential
class." *Masoud v. 1285 Bakery Inc.*, No. 15-cv-7414, 2017 WL
448955, at *5 (S.D.N.Y. Jan. 26, 2017); *see also Ansoumana*, 201
F.R.D. 81, 87 (S.D.N.Y. 2001).  The Defendants' alleged failure
to pay proper overtime is the core of Plaintiff's complaint, and

---

[2] Though some state courts in New York have declined to follow this
guidance, *see, e.g.*, *Tokhtaman v. Human Care, LLC*, 52 N.Y.S.3d 89, 91
(2d Dep't 2017), Plaintiff in this action does not challenge
Defendants' decision to pay home healthcare workers for only 13 hours
of a 24-hour shift (Reply at 5 n.4).

it is typical of the claims of all potential class members, regardless of the types of shifts those class members normally worked.

Accordingly, the court is satisfied that Plaintiff's claims are "typical of the claims" of the proposed class.  Fed. R. Civ. P. 23(a)(3).

## IV.  Adequate Representation

The final requirement pursuant to Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  To satisfy this requirement, "the named plaintiff[] must 'possess the same interest[s] and suffer the same injur[ies] as the class members.'"  *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997)) (second and third alterations in original).

The adequacy inquiry involves two steps: (1) the named plaintiffs must "demonstrate that 'class counsel is qualified, experienced and generally able to conduct the litigation,'" and (2) that "'there is no conflict of interest between the named plaintiffs and other members of the plaintiff's class.'" *Ansoumana,* 201 F.R.D. at 87 (quoting *Marisol A. ex rel. Forbes v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997)).

18

Defendants do not challenge the qualifications or expertise of Plaintiff's counsel.  Defendants, however, contend that "Plaintiff's own papers and her proposed class definition establish that she fails even the most basic, threshold standard for adequacy of representation."  (Opp. at 15-16.)  Defendants argue that having never worked a 24-hour shift, Plaintiff cannot adequately represent the members of the proposed class who did.

Though Defendants' arguments *might* have "defeated typicality, they do not defeat adequacy: courts in the Eastern District have found typicality based on the class representative's 'basic familiarity with [the] action.'"  *Marcus v. AXA Advisors, LLC*, 307 F.R.D. 83, 100 (E.D.N.Y. 2015) (quoting *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 339 (E.D.N.Y.2013)) (alteration in original).  Indeed, "courts generally certify proposed representatives 'as long as the plaintiff has some basic knowledge of the lawsuit and is capable of making intelligent decisions based upon his [or her] lawyers' advice.'"  *Annunziato,* 293 F.R.D. at 339 (quoting *Harrison v. Great Springwaters of America, Inc.,* No. 96-cv-5110, 1997 WL 469996, at *7 (E.D.N.Y. June 18, 1997)).

Plaintiff's claims align with those workers who were not paid overtime as day-shift workers, and her interests are not antagonistic to those who worked 24-hour shifts.  Because

19

the "named [P]laintiff[] wish[es] to represent [her] fellow co-
workers in a collective attempt to receive the wages due them[,]
. . . there is no question as to the adequacy of representation
in this matter." *Velez v. Majik Cleaning Serv., Inc.*, No. 03-
cv-8698, 2005 WL 106895, at *4 (S.D.N.Y. Jan. 19, 2005).

   **V.   Ascertainability**

      The Second Circuit has established a fifth
prerequisite to class certification, "the implied
ascertainability requirement," which demands that a class be
"sufficiently definite so that it is administratively feasible
for the court to determine whether a particular individual is a
member." *In re Petrobas Sec. Lit.*, 862 F.3d 250, 260 (2d Cir.
2017) (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 24
(2d Cir. 2015)).  "A class is ascertainable when defined by
objective criteria . . . and when identifying its members would
not require a mini-hearing on the merits of each case." *Brecher*,
806 F.3d at 24-25.  The court must be able to determine who is
in the class "without having to answer numerous individualized
fact-intensive questions."  *Fogarazzo v. Lehman Bros.,* 232 F.R.D
176, 181 (S.D.N.Y. 2005) (quotation and alteration omitted).

      Defendants contend that, with respect to the NYLL §
195 hiring notice claim, the class is not ascertainable, because
it "would depend on an individualized determination of each

20

person's primary language." (Opp. 25-26.)  However, the
rationale for the ascertainability prerequisite is simply to
ensure that the proposed class is readily identifiable.  *See
Brecher*, 806 F.3d at 24-25.  "The standard for ascertainability
is 'not demanding' and is 'designed only to prevent the
certification of a class whose membership is truly
indeterminable.'"  *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561,
567 (S.D.N.Y. 2014) (quoting *Gortat v. Capala Bros., Inc.*, 2010
WL 1423018, at *2 (E.D.N.Y. Apr. 9, 2010)).

A determination of each potential class members'
primary language may be relevant to whether they actually
received a hiring notice in that primary language.  But it is
not relevant to who could be a member of the class, because *all*
employees were required to receive a notice in their primary
language.  The court need not inquire about each potential class
members' primary language to ascertain who can be a class
member.  *See Marin v. Apple-Metro, Inc.*, No. 12-cv-5274, 2017 WL
4950009, at *48 (E.D.N.Y. Oct. 4, 2017) ("[B]ecause defendants
were able to provide plaintiffs with list of individuals who
were members of the conditionally certified FLSA collective
action, defendants would also be able to create a list of
individuals who are potential members of the certified NYLL
subclasses.").  Moreover, once the prospective class is

identified, the questions would include whether employees received notices in their primary languages, whether the notices stated the legal overtime rate, and whether the employees would be "paid by the hour, shift, day, week, salary, piece, commission, or other." (*See* Reply at 3 n.3; NYLL § 195(1).) Those questions will ultimately determine Defendants' liability, but have nothing to do with whether class members can be identified in the first place.

Accordingly, the court finds that the proposed class is ascertainable.

**VI.  Rule 23(b) Requirements**

After satisfying the Rule 23(a) prerequisites, the proposed class must qualify under one of the three categories st forth in Rule 23(b).  Plaintiff seeks to certify the class under Rule 23(b)(3), with requires that "the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); (*see* Mem. at 14-15).

"Rule 23(b)(3) includes a non-exhaustive list of factors pertinent to a court's 'close look' at the predominance and superiority criteria:

22

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Amchem*, 521 U.S. at 615–16 (quoting Fed. R. Civ. P. 23 (b)(3)).

### A. Predominance

The "predominance inquiry tests whether [the] proposed [c]lass[] [is] sufficiently cohesive to warrant adjudication by representation." *Id.* at 623.  The predominance requirement is "satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 55 (E.D.N.Y. 2019) (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)).  "Typically, common issues predominate when liability is determinable on a class-wide basis, even where class members have individualized damages." *Id.; see also Haseman v. Gerber Products Co.,* 331 F.R.D. 239, 275-76 (E.D.N.Y.

2019) ("A class can be certified under Rule 23(b)(3) even if damages require individualized determination.").

Under the Supreme Court's decision in *Comcast Corp v. Behrend*, "a model for determining class wide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury." *Roach*, 778 F.3d at 402 (quoting *Comcast,* 569 U.S. 27 (2013)). The "Second Circuit has interpreted *Comcast* narrowly, finding that it did not change in any major way the standards under Rule 23(b)(3)," *Scheufele v. Tableau Software, Inc.,* No. 17-cv-5753, 2020 WL 2553100, at *4 (S.D.N.Y. Feb. 13, 2020); *see Roach*, 778 F.3d at 408 ("We do not read *Comcast* as overruling the[] decisions" holding that "'the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification' under Rule 23(b)(3).") (quoting *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir.2010)).

Defendants acknowledge that all employees in the proposed class were required to be paid the legal overtime rate when they worked overtime, and that the overtime rate was not paid correctly at least during the period from January 2015 through December 2016. (*See* Opp. at 17.) Defendants contend, however, that determinations such as whether each class member worked overtime, how much overtime was worked, and so on, would

require "individual-by-individual inquiries." (*Id.* at 18.)
But, again, differences such as the number of hours worked by
each class member do not preclude class certification, including
under Rule 23(b)(3), where "Plaintiffs allege that all [c]lass
[m]embers were systematically underpaid" due to the same policy
and practice, and they "have provided testimony and time records
corroborating these claims." *Mendez v. MCSS Rest. Corp.*, No.
16-cv-2746, 2019 WL 2504613, at *12 (E.D.N.Y. June 17, 2019).
Indeed, the query of whether employees "were supposed to be paid
overtime for working more than 40 hours a week and were not" is
"about the most perfect question[] for class treatment."
*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373
(S.D.N.Y. 2007). "Some factual variation among the
circumstances of the various class members is inevitable and
does not defeat the predominance requirement." *Id.*

Accordingly, Rule 23(b)'s predominance requirement is
satisfied.

### B. Superiority

Plaintiff must also establish "that a class action is
superior to other available methods for fairly and efficiently
adjudicating the controversy." Fed. R. Civ. P. 23 (b)(3). "At
bottom, the superiority analysis requires (1) consideration of the
alternative methods of adjudication available for the claims, (2)

25

a comparison of the fairness to all whose interests are implicated between any alternative methods and a class action, and (3) a comparison of the efficiency of each method in adjudicating the claims." 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 5:63 (16th ed. 2019).

Defendants argue that a superior method of adjudication is the "previously commenced pending NY DOL government administrative proceeding addressing the same claims and relief," and that a class action, "with all of its attendant costs and expenditure of party and judicial resources," is duplicative. (Opp. 23, 28.) In November 2017, the New York Department of Labor "concluded that [Home Family Care] was in violation of minimum wage overtime requirements." (ECF No. 75-1, Declaration of Vladimir Tsirkin, Ex. 1.) The New York Department of Labor issued Notices of Payment Due, addressing money owed to 1,346 home health aides. (*Id.*, Exs. 2-3; *see* Opp. at 1-2.) Plaintiff asserts that Defendants have not complied with the New York Department of Labor's orders to remediate their pay practices, nor have they paid the money owed to employees. (Reply at 9-10.)

Defendants' "argument conflicts with a long line of cases approving of the adjudication of New York Labor Law claims in class action format," even where the New York Department of Labor also has jurisdiction over the employer's conduct. *Andrade*

26

*v. JP Morgan Chase Bank, N.A.*, No. 08-cv-3703, 2009 WL 2899874, at *3 (E.D.N.Y. Sept. 4, 2009); *cf. Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) ("[F]ederal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should 'not refus[e] to decide a case in deference to the States.'") (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)) (second alteration in original).

Defendants rely on *Alix v. Wal-Mart Stores, Inc.* to contend that a class action is not superior to the New York Department of Labor's administrative process.  838 N.Y.S.2d 885 (N.Y. Sup. Ct. 2007), *aff'd* 57 A.D.3d 1044 (3d Dep't 2008) (denying class certification).  *Alix* is not binding on this court, and is distinguishable because "in *Alix*, the court found that the Labor Law claim asserted by the putative class representatives was 'markedly different from that of the proposed class' . . . and concluded that the administrative process overseen by the New York State Commissioner of Labor was a superior method of adjudicating the class members' claims'" *Andrade*, 2009 WL 2899874, at *3 (quoting *Alix*, 57 A.D.3d at 1046).[3]  "In other words, the *Alix*

---

[3] Defendants also cite various cases from outside the Second Circuit, which are against the weight of case law in this circuit.  *See e.g.*, *Grullon v. Bank of Am., N.A.*, 2013 WL 9681040, at *22 (D.N.J. Mar. 28,

court's 'superiority' analysis was intertwined with its 'commonality' and 'typicality' analysis, the latter factors having been focal points throughout the decision denying class certification." *Id.* Here, as discussed above, the potential class members' claims are similar, as they were allegedly subjected to the same policy, and so there is no particular reason that the New York Department of Labor proceedings would be a superior means of adjudicating the claims.

Where, as here, plaintiffs seek to proceed with a class action despite an ongoing New York Department of Labor administrative proceeding, the "two cases are simply moving forward on parallel tracks." *Omar v. 1 Front St. Grimaldi, Inc.*, No. 16-cv-5824, 2019 WL 1322614, at *6 (E.D.N.Y. Jan. 8, 2019). Defendants will not be prejudiced if a class is certified because "any payments made pursuant to the Department of Labor will be credited to [D]efendants in calculating damages," and if the two actions truly are similar, "discovery will be largely duplicative." *Id.; see In re Beacon Assocs. Litig.*, No. 09-cv-777, 2012 WL 1569827, at *13 (S.D.N.Y. May 3, 2012) ("[T]he

2013) (quoting *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011)).

existence of the parallel government action does not bar
certification of the class under Rule 23(b)(3).").

Moreover, this class action will allow for simultaneous
adjudication of the hiring notice claim under NYLL § 195, which is
does not appear to be at issue in the New York Department of Labor
proceedings.  Defendants contend that Plaintiff cannot justify a
parallel class action on the basis of her "recently added NYLL §
195 hiring notice claim" because that claim does not meet the Rule
23 requirements, and there is not supplemental jurisdiction over
the NYLL § 195 claim.  (Opp. at 25-27.)  Defendants aver that
Plaintiff must either argue that the NYLL § 195 claim is related
to the FLSA statutory overtime claim (in which case it is
duplicative of the New York Department of Labor proceedings), or
that it is unrelated to the FLSA statutory overtime claim (in
which case supplemental jurisdiction is improper).  (*Id.*)

Notwithstanding the potential duplicative overlap of the
New York Department of Labor proceedings and the overtime claims
in this action, both may proceed.  *See Omar,* 2019 WL 1322614, at
*6.  Furthermore, Plaintiff's claim under NYLL § 195 not only
alleges that wage notices were not provided in employees' primary
languages, but also that the notices did not specify the legal
overtime rate to which employees were entitled.  (*See* Atakhanova
Decl. ¶ 8.)  Thus, the claim is ultimately related to Defendants'

29

pay practices, and supplemental jurisdiction is appropriate. *See Figurowski v. Marbil Inv'rs, LLC*, No. 14-cv-7034, 2015 WL 4000500, at *4 (E.D.N.Y. July 1, 2015) ("Although Plaintiff's Section 195 claim is legally distinct from his claim for overtime under the FLSA, both claims are based on the same factual predicate-namely, Defendants' pay practices.  Accordingly, the Court will exercise supplemental jurisdiction over Plaintiff's Section 195 claim.").

Defendants further argue that recovery for the NYLL "§ 195 claim either would relate to the alleged failures to pay overtime (and, thereby, fall within the scope of the NY DOL action) or consist of statutory penalties under § 195," and "New York law prohibits a class action recovery of statutory penalties where, as here, the statute does not explicitly authorize class-wide penalties." (Opp. at 27-28.)  This argument also fails.  A federal court may certify a class pursuant to Rule 23, regardless of limitations on class actions imposed by New York law. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406 (2010) ("Rule 23 unambiguously authorizes *any* plaintiff, in *any* federal civil proceeding, to maintain a class action if the Rule's prerequisites are met.  We cannot contort its text, even to avert a collision with state law that might render it invalid.") (emphasis in original); *see Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 502 (E.D.N.Y. 2017).

Thus, a class action is superior to alternative methods of adjudication.  Plaintiffs are entitled to bring private litigation without having to rely on the New York Department of Labor (particularly those class members who worked during the periods not covered by the Department of Labor's investigation).  It is unlikely any individual class members would initiate litigation on their own, as the cost of the lawsuit would exceed any overtime wage recovery.

## Conclusion

For the reasons herein, Plaintiff's motion for class certification is GRANTED.  The putative class shall consist of:

> All individuals who performed work for Home Family Care, Inc. as home health aides and/or home attendants from January 1, 2015 through the present, and who worked more than 40 hours in any work week, or worked four (4) or more 24-hour shifts in any work week.

Class counsel is permitted to provide the proposed notice (ECF No. 74-16) to potential class members.

**SO ORDERED.**

Dated:    Brooklyn, New York
          July 22, 2020

                    _____/s/_____
                    Hon. Kiyo A. Matsumoto
                    United States District Judge

31