UNITED STATES DISTRICT COURT
FOR THE EASTER DISTRICT OF NEW YORK

NAZOKAT ATAKHANOVA,
individually and on behalf of all others similarly situated,

                        Plaintiffs,

    v.                                                                                       Case No.: 16-cv-6707 (KAM)(RML)

HOME FAMILY CARE, INC. and
ALEXANDER KISELEV,

                        Defendants.

## SUPPLEMENTAL DECLARATION OF ALEXANDER KISELEV

ALEXANDER KISELEV hereby swears under the penalties of perjury that:

1.      I am a resident of New Jersey and am over 18 years of age.

2.      My wife and I are the owners of the defendant, Home Family Care, Inc. ("HFC"), in equal shares, and I currently am employed by HFC as its president.

3.      The above-captioned action concerns the U.S. Department of Labor's decision to remove the Fair Labor Standards Act's ("FLSA") exemption for third-party agencies employing home health aides ("HHA").

4.      This regulation, adopted in 2013 and assigned an effective date of January 1, 2015, provides that third-party agencies are no longer exempt from the FLSA's overtime and minimum wage provisions. See 29 C.F.R. Pt. 552.

5.      HFC provides home health aides' services in its patients' homes, and, as such, is a third-party agency employing HHAs and is subject to 29 C.F.R. Pt. 552.

6. Depending on patients' needs and their medical plans of care, HFC provides HHA services to its patients for either several hours per day ("daily shifts") or for the entire day ("live-in shifts").

7. The regular payrates of HHAs employed by HFC were $10.00 per hour in 2014 and 2015, $11.00 per hour in 2016 and 2017, and $13.00 per hour in 2018.

8. Due to some clerical error caused by the rapid expansion of HFC's workforce, some of HHAs working daily shifts in 2015 and 2016 were paid the overtime rate of one and two-tenths of their regular rates instead of the rate of one and a half. This issue, however, was rectified as quickly as practical, and, as of January 13, 2017, the overtime pay rates were brought into compliance with FLSA requirements.

9. Named plaintiff, Nazokat Atakhanova ("Atakhanova"), worked daily shifts but was not employed by HFC continuously. She had worked for HFC as follows:

   a. From 6/24/2014 to 2/7/2015;

   b. From 6/27/2016 to 11/11/2016;

   c. From 12/22/2016 to 2/27/2017;

   d. From 3/15/2017 to 3/24/2017; and

   e. From 4/4/2017 to 3/14/2018.

10. Atakhanova did not work more than 40 hours per week on average. A copy of Atakhanova's schedule is annexed hereto as **Exhibit "A"**.

11. A copy of Atakhanova's check history report is annexed hereto as **Exhibit "B"**.

12. Due to the aforementioned clerical error, Atakhanova was paid an incorrect overtime rate between July 22, 2016, and September 2, 2016, but was paid correctly thereafter. Id.

13. Upon hiring, Atakhanova received a correct and accurate wage notice stating that her regular rate of pay was $10 per hour – the minimum hourly rate at that time - and that her

overtime rate of pay was the "time in a half of [m]inimum wage." A copy of Atakhanova's wage notice is annexed hereto as **Exhibit "C"**.

14. Galina Borshman ("Borshman") worked daily shifts, and, due to said clerical error, she was paid an incorrect overtime rate up to December 23, 2016, but had been paid correctly thereafter. A copy of Borshman's check history report is annexed hereto as **Exhibit "D"**.

15. Because HFC could not possibly be present at its patients' residences at the times HHAs services were being provided, all HHAs in HFC's employ were instructed to report instances when they were lacking the required eight hours of sleep time and three hours per shift of mealtime so that they could be compensated properly.

16. In the absence of such reports, HHAs on live-in shifts were paid for 13 hours per shift for the actual hours they had worked.

17. Fatima Kamilova ("Kamilova") worked live-in shifts and did not report any lack of sleep- or mealtimes; hence, she was paid for 13 hours per shift. A copy of Kamilova's check history report is annexed hereto as **Exhibit "E"**.

18. Eugenia Barahona ("Barahona") worked live-in shifts and did not report any lack of sleep- or mealtimes; hence, she was paid for 13 hours per shift. A copy of Barahona's check history report is annexed hereto as **Exhibit "F"**.

19. Sanat Kamarov ("Kamarov") worked live-in shifts and did not report any lack of sleep- or mealtimes; hence, he was paid for 13 hours shift. A copy of Kamarov's check history report is annexed hereto as **Exhibit "G"**.

Respectfully,

*Alexander Kiselev*
Alexander Kiselev (Aug 4, 2023 20:07 EDT)

Alexander Kiselev

Dated: August 4, 2023

3